UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CHRISTOPHER M. FLETCHER
187 Pearl Street
Cambridge, MA 02139,

EOIN M. PRYAL
200 Hudson Street
Apartment 21
Northborough, MA 01532

SECOND AMENDMENT FOUNDATION, INC.
12500 NE 10th Place
Bellevue, WA 98005

COMMONWEALTH SECOND AMENDMENT, INC.
22 River Street
Braintree, MA 02184

Plaintiffs

v.

ROBERT C. HAAS
*in his official capacity as*
Cambridge Commissioner of Police
125 Sixth Street
Cambridge, MA 02142

MARK K. LEAHY
*in his official capacity as*
Northboro Chief of Police
211 Main Street
Northborough, MA 01532

JASON A. GUIDA, ESQ.
*in his official capacity as*
Director of the Firearms Records Bureau
200 Arlington Street
Suite 2200
Chelsea, MA 02150

Defendants

Civil Action No. 11-CV-10644

**VERIFIED COMPLAINT**

Plaintiffs, Christopher M. Fletcher ("Dr. Fletcher"), Eoin M. Pryal ("Mr. Pryal"), Second Amendment Foundation, Inc. ("SAF"), and Commonwealth Second Amendment, Inc. ("C2A"), through their attorney, hereby allege as follows:

## NATURE OF ACTION

1. This is a 42 U.S.C. § 1983 action for equitable, declaratory, and injunctive relief challenging Massachusetts's statutory bar on lawfully admitted aliens from obtaining Licenses to Carry pursuant to M.G.L. c. 140, § 131 and Firearm Identification Cards pursuant to M.G.L. c. 140, § 129B.

## PARTIES AND JURISDICTION

2. Dr. Fletcher is a resident of Cambridge, Massachusetts, and is a resident alien lawfully admitted into the United States for permanent residence.

3. Mr. Pryal is a resident of Northboro, Massachusetts, and is a resident alien lawfully admitted into the United States for permanent residence.

4. SAF is a non-profit membership organization incorporated under the laws of Washington with its principal place of business in Bellevue, Washington. SAF's membership includes lawfully admitted aliens residing in the Commonwealth. SAF has over 600,000 members and supporters nationwide, including thousands in the Commonwealth of Massachusetts. The purposes of SAF include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms. SAF brings this action on behalf of itself and its members.

5. C2A is an organization incorporated under the laws of Massachusetts with its principal place of business in Braintree, Massachusetts. C2A is currently seeking a determination of 26 U.S.C. § 501(c)(3) non-profit status from the Internal Revenue Service. The purposes of C2A

include education, research, publishing and legal action focusing on the Constitutional right privately to own and possess firearms. C2A brings this action on behalf of itself and its supporters, which include many lawfully admitted aliens residing in the Commonwealth.

6. Defendant Robert C. Haas ("Commissioner Haas") in his official capacity as Cambridge Commissioner of Police is the authority charged with issuing Massachusetts Firearm Identification Cards and Licenses to Carry to residents residing in Cambridge, Massachusetts and is located in the same.

7. Defendant Mark K. Leahy ("Chief Leahy") in his official capacity as Northboro Chief of Police is the authority charged with issuing Massachusetts Firearm Identification Cards and Licenses to Carry to residents residing in Northboro, Massachusetts and is located in the same.

8. Defendant Jason A. Guida, Esq. ("Director Guida") in his official capacity as Director of the Firearms Records Bureau is the authority charged with issuing Massachusetts Resident Alien Permits to lawfully admitted aliens residing in the Commonwealth and is located in Chelsea, Massachusetts.

9. Jurisdiction is founded on 28 U.S.C. § 1331 in that this action arises under the Constitution and laws of the United States, and under 28 U.S.C. § 1343(3) in that this action seeks to redress the deprivation, under color of the laws, statute, ordinances, regulations, customs, and usages of the Commonwealth of Massachusetts of rights, privileges or immunities secured by the United States Constitution and by Acts of Congress.

10. This action seeks relief pursuant to 28 U.S.C. §§ 2201-2202 and 42 U.S.C. §§ 1981(a), 1983. Venue lies in this district pursuant to 28 U.S.C. § 1391.

## STATUTORY BACKGROUND

11. U.S. citizens residing in Massachusetts must obtain a permit to purchase and possess firearms, ammunition, and feeding devices. M.G.L. c. 140, §§ 129C and 131E.

12. Local Police Chiefs/Commissioners administer firearms licensing for United States citizens residing in their town/city. M.G.L. c. 140, §§ 121, 129B, and 131.

13. A Firearms Identification Card, is a "shall-issue" license, if United States citizen applicants residing in the Commonwealth meet statutory requirements. M.G.L. c. 140, § 129B.

14. A Firearms Identification Card limits ownership to low capacity shotguns and rifles. M.G.L. c. 140, §. 129B.

15. A second set of licenses available to United States citizens residing in the Commonwealth, based on "may-issue" Chief's discretion, are Licenses to Carry, identified as "LTC A" and "LTC B." M.G.L. c. 140, § 131.[1]

16. A License to Carry of any subset or restriction permits ownership and possession of a handgun, rifle, and shotgun in the licensee's home. M.G.L. c. 140, §§ 130 and 131E.

17. A restricted License to Carry does not permit the licensee to carry a handgun on his person outside of his home.

18. Lawfully admitted aliens residing in the Commonwealth are specifically denied the ability to obtain a Firearms Identification Card in M.G.L. c. 140, § 129B.

19. Lawfully admitted aliens residing in the Commonwealth are specifically denied the ability to obtain a License to Carry of any kind. M.G.L. c. 140, § 131.

20. Lawfully admitted aliens residing in the Commonwealth may only obtain a Resident Alien Permit. M.G.L. c. 140, § 131H.

---

[1] "License to Carry" is a misnomer, as an LTC B does not grant the right to carry or conceal carry and only a subset of the LTC A, namely LTC A ALP (All Lawful Purposes), permits the right to conceal carry. G.L.c. 140, § 130.

21. Unlike Licenses to Carry and Firearms Identification Cards, Resident Alien Permits are processed directly by the Firearms Record Bureau and require an applicant to travel to Chelsea, Massachusetts to "appear for final permit processing . . ." Director Jason A. Guida, Esq., *Application for Resident Alien Permit to Possess Rifles or Shotguns*, December 22, 2010, *available at* http://www.mass.gov/Eeops/docs/chsb/firearms/Resident%20Alien_20100126.pdf (last visited February 25, 2011). A true and correct copy of Director Guida's letter is attached hereto and made a part hereof as Exhibit 1.

22. A Resident Alien Permit only allows its subject lawfully admitted alien to possess a "low capacity" rifle or shotgun. M.G.L. c. 140, § 131H.

23. Lawfully admitted aliens with a Resident Alien Permit may not purchase firearms, feeding devices, or ammunition from a Federal Firearms Licensed dealer in the Commonwealth. M.G.L. c. 140, § 131E.

24. Lawfully admitted aliens with a Resident Alien Permit may not purchase firearms, feeding devices, or ammunition from a duly licensed resident (possessing an LTC or Firearms Identification Card) in an otherwise lawful face to face transaction. M.G.L. c. 140, § 129C.

25. There are no federal laws requiring United States citizenship as a prerequisite for the issuance of a license to purchase, carry, transport, or carry concealed a firearm.

## **FACTS**

26. Plaintiff, Dr. Christopher M. Fletcher, became a permanent resident alien of the United States on or about June 8, 2009. Prior to approval of his application of permanent residency, submitted September of 2005, Dr. Fletcher was granted both J-1 (January 1995 – January 1998) and H1-B (January 1998 - April 1999, July 2001 – September 2005) Visas, and temporarily resided in the United States as a lawfully admitted alien.

27. Prior to residing in the United States, Dr. Fletcher lived in the United Kingdom.

28. Prior to residing in the Commonwealth, Dr. Fletcher lived in California, where he was granted a Basic Firearms Safety Certificate and Handgun Safety Certificate allowing Dr. Fletcher to purchase and possess firearms, including handguns.

29. Upon moving to the Commonwealth, Dr. Fletcher was required to sell a valuable firearm that he purchased in California.

30. Dr. Fletcher was and continues to be an enthusiastic participant in shooting sports, including training in handgun and rifle proficiency. The Commonwealth's firearm licensing and possession limitations and restrictions significantly limit Dr. Fletcher's ability to be fully involved in training and practice activities.

31. Dr. Fletcher successfully completed the Basic Firearms Safety Course, as prescribed by M.G.L. c. 140, § 131P, and was awarded a Basic Firearms Safety Certificate on June 21st, 2008. A true and correct copy of Dr. Fletcher's Basic Firearms Safety Certificate is attached hereto and made a part hereof as Exhibit 2.

32. On or about December 21, 2010, Dr. Fletcher visited the Cambridge Police Department to complete a License to Carry application, provided payment of the required fee, and provided the required copy of his passport, driver's license, utility bill, cover letter, and his Basic Firearms Safety Certificate.

33. Although Dr. Fletcher had many compelling reasons to apply for a License to Carry, the principal reason Dr. Fletcher applied for a License to Carry was to obtain the ability to possess firearms, namely a handgun, in his home for immediate self-defense.

34. Dr. Fletcher did not apply for a License to Carry to obtain the ability to carry a handgun on his person outside of his home.

35. During the application procedure Dr. Fletcher disclosed that he was a permanent resident alien. Dr. Fletcher was immediately told that he could not be granted a License to Carry and the Cambridge Police Department would not process his application.

36. Dr. Fletcher was then directed by the Cambridge Police Department to apply for a Resident Alien License through the Firearms Records Bureau.

37. On or about January 6, 2011, Dr. Fletcher received a confirmatory email from the Cambridge Police Department reiterating the need for Dr. Fletcher to obtain a Resident Alien License through the Firearms Records Bureau. A true and correct copy of the Cambridge Police Department's email as received by Dr. Fletcher is attached hereto and made a part hereof as Exhibit 3.

38. Plaintiff, Eoin M. Pryal, has been a permanent resident alien in the United States for over one year, after emigrating from the United Kingdom. He is married to a United States Citizen. He is currently employed as a customer service representative at a preeminent firearm manufacturer located in Massachusetts.

39. Prior to residing in the United States, Mr. Pryal was granted a shotgun certificate and international dealer's license for sporting purposes in the United Kingdom, which permitted Mr. Pryal to travel to other countries on hunting trips with his own firearms.

40. Mr. Pryal has vast firearms experience, having served as a Rifleman in the British Territorial Army and as an Engineering Technician in the Royal Air Force. Mr. Pryal has received extensive qualifications in maintaining and servicing multiple firearm types during his service.

41. Mr. Pryal was an avid firearms collector prior to residing in the Commonwealth and continues to regularly participate in shooting sports, including taking training in and competing

in handgun, rifle and shotgun activities. He is prohibited from collecting firearms and significantly limited in his ability to be fully involved in these training and competitive activities.

42. Mr. Pryal worked as a security guard for Securitas Security Services USA, Inc., but his inability to carry a handgun limited his assignments and growth potential at the company.

43. Mr. Pryal is currently employed part time as an assistant instructor at the Massachusetts Firearms School, located in Framingham, Massachusetts, but his inability to possess a handgun has prevented his advancement and growth potential at this training center.

44. Mr. Pryal successfully completed the Basic Firearms Safety Course, as prescribed by M.G.L. c. 140, § 131P, and was awarded a Basic Firearms Safety Certificate on October 25th, 2010. A true and correct copy of Mr. Pryal's Basic Firearms Safety Certificate is attached hereto and made a part hereof as Exhibit 4.

45. On or about January 5, 2011, Mr. Pryal delivered a complete License to Carry application, including payment of the required fee, letters of reference, and his Basic Firearms Safety Certificate, to the Northboro Police Department.

46. Although Mr. Pryal had many compelling reasons to apply for a License to Carry, the principal reason Mr. Pryal applied for a License to Carry was to obtain the ability to possess firearms, namely a handgun, in his home for immediate self-defense.

47. Mr. Pryal did not apply for a License to Carry to obtain the ability to carry a handgun on his person outside of his home.

48. Mr. Pryal's complete License to Carry application was immediately returned to him by the Northboro Police Department, and he was told that he could not be granted a License to Carry and the Northboro Police Department would not accept his application.

49. Mr. Pryal was directed by the Northboro Police Department to apply for a Resident Alien License through the Firearms Records Bureau.

50. Dr. Fletcher and Mr. Pryal have been denied the ability to purchase and possess a handgun and ammunition for immediate self-defense in their homes by the Defendants.

**Count I**
**Violation of Equal Protection of the Law**

51. Paragraphs 1 through 50 are realleged and incorporated herein by reference.

52. The citizenship requirements contained in M.G.L. c. 140, §§ 129B and 131 and all other Commonwealth statutory language, which restrict lawfully admitted aliens firearms rights and privileges based on citizenship, on their face and as applied, are unconstitutional denials of equal protection of the laws and are in violation of the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**Count II**
**Violation of Second Amendment**

53. Paragraphs 1 through 52 are realleged and incorporated herein by reference.

54. The citizenship requirements contained in M.G.L. c. 140, §§ 129B and 131, and all other Commonwealth statutory language, which restrict lawfully admitted aliens firearms rights and privileges based on citizenship, on their face and as applied, violate the Plaintiff's individual right to possess a handgun and ammunition for defense of hearth and home secured by the Second Amendment to the United States Constitution.

**On All Counts**

55. Paragraphs 1 through 54 are realleged and incorporated herein by reference.

56. A controversy exists as to whether the citizenship requirements contained in M.G.L. c. 140, §§ 129B and 131 are unconstitutional.

57. A declaration from this Court would settle this issue.

58. A declaration would also serve a useful purpose in clarifying the legal issues in dispute.

59. The Plaintiffs seek a declaration that the citizenship requirements contained in M.G.L. c. 140, §§ 129B and 131 are unconstitutional.

60. In the absence of an injunction, the citizenship requirements of M.G.L. c. 140, §§ 129B and 131 would continue to be enforced and would prevent Dr. Fletcher, Mr. Pryal, SAF's lawfully admitted alien members residing in the Commonwealth, and C2A's lawfully admitted alien supporters residing in the Commonwealth from (1) successfully obtaining a License to Carry or a Firearms Identification Card and/or (2) possessing a handgun and ammunition for defense of hearth and home.

61. The Plaintiffs would continue to suffer irreparable injury if the Court does not issue an injunction.

62. There is no adequate remedy at law because only an injunction would allow Dr. Fletcher, Mr. Pryal, SAF's lawfully admitted alien members residing in the Commonwealth, and C2A's SAF's lawfully admitted alien supporters residing in the Commonwealth the opportunity to (1) obtain a License to Carry or a Firearms Identification Card or (2) possess a handgun and ammunition for defense of hearth and home.

WHEREFORE, Plaintiffs pray that the Court:

1. Issue preliminary and permanent injunctions (a) enjoining Defendant Commissioner Robert C. Haas, Defendant Chief Mark K. Leahy, and Defendant Director Jason A. Guida, Esq. from enforcing the United States citizenship requirements of M.G.L. c. 140, §§ 129B and 131 against the Plaintiffs; and

2. Enter the following:

(a) A declaratory judgment that M.G.L. c. 140, §§ 129B and 130 and all other Commonwealth statutory language, which restrict lawfully admitted aliens firearms rights and privileges based on citizenship, are null and void because they (i) violate the equal protection of the laws guaranteed by the Fourteenth Amendment to the United State Constitution; and (ii) infringe on the right of the people to keep and bear arms in violation of the Second and Fourteenth Amendments to the United States Constitution; and

(b) Issue preliminary and permanent injunctions against the Defendants and their political subdivisions, including officers, agents, and employees thereof, from enforcement of M.G.L. c. 140, §§ 129B and 131 and all other Commonwealth statutory language, which restrict lawfully admitted aliens firearms rights and privileges based on citizenship.

3. Grant such other and further relief, in law and equity, as the Court deems proper.

4. Award Plaintiffs' attorney's fees and costs pursuant to 42 U.S.C. § 1988.

Respectfully submitted,

Christopher M. Fletcher, Eoin M. Pryal, Second Amendment Foundation, Inc., and Commonwealth Second Amendment, Inc.
By their attorney,

/s/ Joseph M. Hickson III

Joseph M. Hickson III
Hickson Law Group, P.C.
51 Taylor Street, 3rd Floor
Springfield, MA 01103
Phone: 413.732.7708
Fax: 413.375.9888
BBO # 665687
Email: jhickson@HicksonLawGroup.com