UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHRISTOPHER M. FLETCHER, EOIN M. PRYAL, SECOND AMENDMENT FOUNDATION, INC., and COMMONWEALTH SECOND AMENDMENT, INC.<br>　　　　Plaintiffs,<br><br>　　v.<br><br>ROBERT C. HAAS, in his official capacity as Cambridge Commissioner of Police, MARK K. LEAHY, in his official capacity as Northboro Chief of Police, and JASON A. GUIDA, in his official capacity as Director of the Massachusetts Firearms Records Bureau,<br>　　　　Defendants. | No. 1:11-cv-10644-DPW<br><br>*Leave to File Granted June 24, 2011* |

**REPLY MEMORANDUM IN SUPPORT OF DEFENDANT JASON GUIDA'S MOTION TO DISMISS ALL CLAIMS *and* IN OPPOSITION TO PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT**

**Reply Argument.**

**I.　PLAINTIFFS' NEW PREEMPTION CLAIM HAS NO MERIT.**

Plaintiffs raise a new preemption claim for the first time in their opposition to the motions to dismiss. The Court should reject this claim both because it appears nowhere in Plaintiffs' complaint, and because it is based on a legal theory that the Supreme Court has already rejected.

The complaint contains only two claims: it alleges that the Massachusetts laws allowing aliens to obtain a permit to carry or possess rifles and shotguns, but not large or regular capacity handguns, violate the Second Amendment and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Plaintiffs now seek to argue a third claim, that these laws are preempted by the exclusive Federal power to regulate immigration. *See* Ps' Opp. (document no. 19) at 15-16. Plaintiffs have not moved to amend their complaint to add such a claim, and instead say they will do so "if necessary." *Id*. at 19. But such a "statement does not constitute a motion to amend a complaint." *Fisher v. Kadant, Inc.*, 589 F.3d 505, 508 (1st Cir. 2009) (quoting *Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 327 (1st Cir. 2008)).

Plaintiffs cannot defend their complaint by arguing a claim that appears nowhere in the pleading. *See, e.g., Brait Builders, Corp. v. Commonwealth of Massachusetts*, 2011 WL

1631952, *3-*4 (1st Cir. 2011) (plaintiff could not evade Eleventh Amendment immunity based on claims against individual defendants that were never added to the complaint). In any case, any motion by Plaintiffs to amend their complaint to add their new preemption claim would fail because the proposed amendment would be futile. *Cf. Chiang v. Skeirik*, 582 F.3d 238, 243-44 (1st Cir. 2009).

Plaintiffs' new claim, that any State law "based on alienage encroach[es] upon exclusive Federal power" to regulate immigration and naturalization, is incorrect. Ps' Opp. (doc. 19) at 15. The Supreme Court has rejected the argument "that every state enactment which in any way deals with aliens is a regulation of immigration and thus per se pre-empted by this constitutional power…." *De Canas v. Bica*, 424 U.S. 351, 355 (1976) (affirming California law barring employment of illegal aliens if doing so would have adverse effect on lawful resident workers). "[T]he fact that aliens are the subject of a state statute does not render it a regulation of immigration, which is essentially a determination of who should or should not be admitted into the country, and the conditions under which a legal entrant may remain." *Id*. In sum, "[t]he Constitution, by committing regulation of immigration to the federal government, did not deprive the states of all power to legislate regarding aliens." *LeClerc v. Webb*, 419 F.3d 405, 423 (5th Cir. 2005), *reh'g en banc denied*, 444 F.3d 428 (5th Cir. 2006), *cert. denied*, 551 U.S. 1158 (2007) (applying *De Canas* to uphold Louisiana law that bars nonimmigrant aliens from seeking admission to state Bar).

Thus, "absent congressional action" to the contrary, State laws that regulate aliens are not preempted. *De Canas*, 424 U.S. at 356. But Plaintiffs have not identified any congressional enactment that preempts that Massachusetts laws regarding firearm possession by aliens.

Federal "pre-emption jurisprudence" rests on two key principles: "First, the purpose of Congress is the ultimate touchstone in every pre-emption case. Second, in all pre-emption cases, and particularly in those in which Congress has legislated in a field which the States have traditionally occupied, we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *In re Pharmaceutical Industry Average Wholesale Price Litigation*, 582 F.3d 156,

173 (1st Cir. 2009) (quoting *Wyeth v. Levine*, 129 S.Ct. 1187, 1194 (2009)); *accord, e.g. De Canas*, 424 U.S. at 356-60. This presumption against preemption applies with particular force here, as States have long regulated the possession of firearms under their police powers. *See, e.g., District of Columbia v. Heller*, 554 U.S. 570, 626-27 (2008); *United States v. Rene E.*, 583 F.3d 8, 14-16 (1st Cir. 2009).[1] Nothing in the Supreme Court's recent Second Amendment decisions nullified the States' police powers to regulate firearm possession; to the contrary, applying the Second Amendment to the States "does not imperil every law regulating firearms," and "[S]tate and local experimentation with reasonable firearms regulations will continue under the Second Amendment." *McDonald v. City of Chicago, Illinois*, 130 S.Ct. 3020, 3047 & 3046 (2010) (plurality).

"Federal law preempts state law (1) when Congress has expressly so provided, (2) when Congress intends federal law to "occupy the field" and (3) to the extent that state law conflicts with any federal statute." *American Steel Erectors, Inc. v. Local Union No. 7, Intern. Ass'n of Bridge, Structural, Ornamental & Reinforcing Iron Workers*, 536 F.3d 68, 84 (1st Cir. 2008). But Plaintiffs have failed to demonstrate preemption in any of these ways.

Plaintiffs make no claim of express preemption. Congress has never said that States cannot regulate possession of firearms by aliens.

Nor is there any indication that Congress intended to occupy the entire field of firearms licensing, for aliens or otherwise, when it made it a federal crime for illegal aliens and most aliens admitted under a non-immigrant visa (other than those entitled to engage in lawful hunting or sporting activities) "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(5). Plaintiffs' suggestion to the contrary is without merit. *Cf.* Ps' Opp. (doc. 19) at 15. Implied field preemption only occurs when Congress creates "a scheme of federal regulation 'so pervasive as

---

[1] It is well established that the Massachusetts Legislature may regulate the bearing of arms under its police powers. *See, e.g., Commonwealth v. Loadholt*, 456 Mass. 411, 429 n.11 (2010); *Commonwealth v. Murphy*, 166 Mass. 171, 172 (1896).

to make reasonable the inference that Congress left no room for the States to supplement it.'" *Fitzgerald v. Harris*, 549 F.3d 46, 52 (1st Cir. 2008) (quoting *Barnett Bank of Marion County, N.A. v. Nelson*, 517 U.S. 25, 31 (1996), and *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947)). But Congress did not adopt a pervasive scheme regulating the local possession of firearms. To the contrary, Congress has made clear that States could and would continue to be responsible for issuing firearms licenses. *See, e.g.,* 18 U.S.C. § 922(t)(4)-(5) (Brady Handgun Violence Prevention Act provisions barring licensed dealers from transferring firearm to person barred by State law from receiving or possessing it); *see also* 18 U.S.C. § 922(q)(2)(B)(ii) (Gun Free School Zone Act provision exempting from its prohibition possession of a gun licensed by a State or locality).[2] Because Congress assumed that States will continue to "play a significant role" in firearms licensing, "[t]here is no federal preemption here." *Fitzgerald*, 549 F.3d at 52.

There is no conflict between 18 U.S.C. § 922(g)(5) and the Massachusetts firearms licensing laws, because it is not impossible for Plaintiffs to comply with the federal and Massachusetts laws, and because the Massachusetts laws pose no obstacle to accomplishing the purposes and objectives of Congress in barring illegal and non-immigrant aliens from engaging in the interstate or international transport of firearms. *Cf. Freightliner Corp. v. Myrick*, 514 U.S. 280, 287-90 (1995).

Nor do the Massachusetts firearms licensing laws conflict with general federal immigration law. Where, as here, "States possess broad authority under their police powers to regulate" particular conduct or activities, the Court cannot presume that Congress intended to occupy the field merely because it enacted federal laws dealing with immigration. *De Canas*, 424 U.S. at 356-57. "Only a demonstration that complete ouster of state power including state power to promulgate laws not in conflict with federal laws was 'the clear and manifest purpose of Congress' would justify that conclusion." *Id*. at 357 (quoting *Rice*, 331 U.S. at 230).

---

[2] The Supreme Court struck down 18 U.S.C. § 922(q), which made it a federal crime to possess a firearm in a local school zone, on the ground that it exceed congressional authority under the Commerce Clause. *See United States v. Lopez*, 514 U.S. 549, 559-67 (1995). *Lopez* makes clear that Congress's authority under the Commerce Clause to regulate local possession of firearms is limited, and could not substitute for the States' general police powers.

Plaintiffs' reliance on *Graham v. Richardson*, 403 U.S. 365 (1971), *Takahashi v. Fish & Game Comm'n*, 334 U.S. 410 (1948), and *Mohamed v. Parks*, 352 F. Supp. 518 (D. Mass. 1973), is misplaced. *See* Ps' Opp. (doc. 19) at 15. In *Graham*, the Supreme Court held (in relevant part) that a State's denial of welfare benefits to lawfully present aliens, if not based on "a uniform nationwide residency requirement as a condition of federally funded welfare benefits," has effect of denying such aliens "entrance and abode" and thus conflicts with federal immigration statutes. 403 U.S. at 376-80 & 382 n.14. Similarly, *Takahashi* held that California could not bar a lawfully present alien "from earning his living as a commercial fisherman in the ocean waters off the coast of California," 334 U.S. at 412-22, and *Mohamed* (which came before *De Canas*) held that the City of Boston could not bar all aliens from all municipal employment. But the Commonwealth's laws that allow aliens to possess rifles and shotguns but not handguns is not tantamount to a denial of a right to enter, live in, or work in Massachusetts. *De Canas* governs here.

## II. UNLIKE MANY OTHER CONSTITUTIONAL AMENDMENTS, THE SECOND AMENDMENT ONLY PROTECTS RIGHTS OF "THE PEOPLE," NOT ALIENS.

The Second Amendment only protects "the right of <u>the people</u> to keep and bear arms." As Defendant Guida has demonstrated, the Supreme Court made clear in *Heller* and *McDonald* that this right of "the people" is a right held only by citizens of the United States. *See* Guida's Mem. (document no. 13) at 5-7.

The case law that Plaintiffs cite in response is irrelevant. *Cf.* Ps' Opp. (doc. 19) at 5). Those decisions hold that various constitutional provisions that are <u>not</u> limited by their terms to "the people"—such as the protections given to all "persons" in the Fifth and Fourteenth Amendments, to "the accused" in the Sixth Amendment, or to the "free exercise" of religion and "freedom of speech" in the First Amendment—apply to citizens and non-citizens alike. But that case law is not relevant here. For example, Plaintiffs quote the portion of *Mathews v. Diaz*, 426 U.S. 67, 77 (1976) which states that "[t]here are literally millions of aliens within the jurisdiction of the United States. The Fifth Amendment, as well as the Fourteenth Amendment, protects every one of these persons…." Ps' Opp. at 5. But they fail to note what follows next, where the

Court stressed that (1) "[t]he fact that all persons, aliens and citizens alike, are protected by the Due Process Clause does not lead to the further conclusion that all aliens are entitled to enjoy all the advantages of citizenship;" and (2) "a host of constitutional and statutory provisions rest on the premise that a legitimate distinction between citizens and aliens may justify attributes and benefits for one class not accorded to the other." 426 U.S. at 78.

*Heller* and *McDonald* make clear that the Second Amendment is among the provisions that protects rights of citizens but not aliens, because it protects a right held only by "the people." *See* Guida's Mem. (doc. 13) at 5-6. This is not some strange or idiosyncratic understanding of what the phrase "the people" means when used in the Constitution. For example, the First Amendment protects the right of "the people … to petition the Government for a redress of grievances." The Supreme Court has made clear that this clause "allows <u>citizens</u> to express their ideas, hopes, and concerns to their government and their elected representatives." *Borough of Duryea, Pa. v. Guarnieri*, 2011 WL 2437008, *7 (U.S. 2011) (emphasis added); *accord City of Cuyahoga Falls, Ohio v. Buckeye Community Hope Foundation*, 538 U.S. 188, 196 (2003) ("all citizens, regardless of the content of their ideas, have the right to petition their government"). Similarly, the Ninth and Tenth Amendments discuss rights retained by or reserved to "the people." This phrase is a term of art that encompasses citizens, not aliens. *See Heller*, 554 U.S. at 581.

### III. PLAINTIFFS HAVE FAILED TO DEMONSTRATE THAT THEIR EQUAL PROTECTION CLAIM ADDS ANYTHING TO THE CASE.

#### A. Because the Second Amendment Affirmatively Sanctions Restricting Firearm Possession to Citizens, the Challenged Massachusetts Laws Do Not Violate the Equal Protection Clause.

Defendant Guida has demonstrated—by analogy to *Richardson v. Ramirez*, 418 U.S. 24, 54-55 (1974)—that, because the Second Amendment allows States to treat aliens differently with respect to keeping or bearing arms, State laws that do so cannot violate the constitutional requirements of equal protection. *See* Guida's Mem. (doc. 13) at 7-9.

Plaintiffs try to distinguish *Richardson v. Ramirez* by asserting that, "[u]nlike the Fourteenth Amendment, the Second Amendment has no 'express language' combined with

'historical and judicial interpretation' affirmatively sanctioning disenfranchisement of lawfully admitted aliens." Ps' Opp. (doc. 19) at 6.  But that is incorrect.  Because the text of the Second Amendment restricts the constitutional right to bear arms to "the people," and the Supreme Court in *Heller* and *McDonald* has construed that language to apply only to citizens, denial by States of gun permits to aliens has an "affirmative sanction" in the Second Amendment.

> **B.  Even if the Equal Protection Clause Were Implicated Here, Rational Basis Review Would Apply to Plaintiffs' Equal Protection Claim.**

Defendant Guida has also demonstrated that, even if Plaintiffs had a viable Equal Protection claim, heightened scrutiny would not be warranted under the Equal Protection Clause merely because the Supreme Court held in *McDonald* that the right secured by the Second Amendment is sufficiently fundamental right to be incorporated into the Fourteenth Amendment. *See* Guida's Mem. (doc. 13) at 9-13.  First Circuit case law makes clear that in such an incorporation case the scope of the constitutional right is determined by the Bill of Rights provision, and "rational basis scrutiny applies to any further equal protection inquiry." *Eulitt v. Maine, Dept. of Educ.*, 386 F.3d 344, 354 (1st Cir. 2004); *accord, e.g., Nordyke v. King*, 2011 WL 1632063, *14 (9th Cir. 2011) (same re right to bear arms claim).

Plaintiffs seem to misconstrue this point.  They cite various cases that apply intermediate scrutiny to Second Amendment claims, and cite to *Heller* for the proposition that rational basis review would not be appropriate for a Second Amendment claim.  *See* Ps' Opp. at 10-12.  But defendant Guida was <u>not</u> arguing that rational basis review would govern a Second Amendment claim, if the Second Amendment applied to non-citizens.  Instead, he showed that: (1) intermediate scrutiny—but not strict scrutiny—is appropriate where the Second Amendment is implicated; but (2) rational basis review governs any separate claim under the Equal Protection Clause of the Fourteenth Amendment.  *See* Guida's Mem. (doc. 13) at 11-13 & n.7.

### Conclusion.

The Second Amendment allows the Commonwealth of Massachusetts to treat citizens and non-citizens differently in granting firearms licenses.  Therefore, the Massachusetts statutory scheme that allows non-citizens to seek a permit to possess and carry regular capacity rifles and

shotguns, but does not allow them to join otherwise qualified citizens in seeking a license to carry large-capacity or concealed or easily concealable weapons, does not violate either the Second Amendment or the Equal Protection Clause.  Finally, the Massachusetts firearm licensing statutes are not preempted by the general Federal power to regulate immigration, by the general body of immigration law enacted by Congress, or by the laws making it a federal crime for illegal and non-immigrant aliens to transport firearms in interstate commerce.

For the reasons stated above and in defendant Guida's initial memorandum, the Court should dismiss this action and deny Plaintiffs' cross-motion for summary judgment.

MARTHA COAKLEY
   *ATTORNEY GENERAL OF MASSACHUSETTS*

   /s/ Kenneth W. Salinger
Kenneth W. Salinger (BBO # 556967)
Assistant Attorney General, Government Bureau
Office of the Attorney General
One Ashburton Place
Boston, MA  02108
617.963.2075
ken.salinger@state.ma.us

July 20, 2011

Certificate of Service

I hereby certify that this document was filed through the Electronic Case Filing (ECF) system and thus copies will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF); paper copies will be sent to those indicated on the NEF as non registered participants on or before July 20, 2011.

   /s/ Kenneth W. Salinger   .